# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

ANTONIO SIMMONS,

        Plaintiff,

   v.

STANLEY WILLIAMS, Warden; JAMES
DEAL, Deputy Warden of Security; WAYNE
JOHNSON, Deputy Warden of Care and
Treatment; ERIC SMOKES, Unit Manager;
JOHNNY DAVIS, Lieutenant; RONNIE
BYNUM, Lieutenant and DHO; CURTIS
WHITFIELD, Sergeant of CERT Team;
ANTONIO ABALOS, C.O. II of CERT Team;
JOHNATHAN SANTIAGO, C.O. II of CERT
Team; ZECHARIAH JONES, C.O. II of
CERT Team; GRIFFIN, C.O. II of CERT
Team; and ANDREW MCFARLANE,
Captain,

        Defendants.

CIVIL ACTION NO.: CV614-111

---

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Smith State Prison in Glennville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, contesting certain conditions of his confinement. The undersigned has conducted an initial review of Plaintiff's Complaint as required by 28 U.S.C. § 1915A. For the reasons set forth below, the undersigned **RECOMMENDS** Plaintiff's official capacity claims against all Defendants, sexual abuse claims, stand-alone verbal threats claims, substantive due process claims, and deprivation of property claims, as well as his monetary damages claims pursuant to the RLUIPA against

Defendants Whitfield, Santiago, Abalos, and Griffin, be **DISMISSED**. Plaintiff's request for the issuance of a preliminary injunction should be **DENIED** at this time. The Court **ORDERS** that a copy of Plaintiff's Complaint and this Order shall be served upon Defendants Bynum, Whitfield, Abalos, Santiago, Williams, Davis, Deal, Jones, McFarlane, Smokes, Griffin, and Johnson. The Court provides additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

STANDARD OF REVIEW

In any civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, Section 1915A requires the Court to screen the complaint for cognizable claims before or as soon as possible after docketing. The court must dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b)(1) & (2).

In conducting this initial review, the Court must ensure that a prisoner plaintiff has complied with the mandates of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915 & 1915A. However, in determining compliance, the Court shall be guided by the longstanding principle that *pro se* pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Walker v. Dugger, 860 F.2d 1010, 1011 (11th Cir. 1988).

In addition, the Court is guided by the Eleventh Circuit Court of Appeals' opinion in Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). In Mitchell, the Eleventh Circuit interpreted the language contained in 28 U.S.C. § 1915(e)(2)(B)(ii), which is nearly identical to that contained in the screening provisions at Section 1915A(b). As the language of Section 1915(e)(2)(B)(ii) closely tracks the language of Federal Rule of Civil

Procedure 12(b)(6), the court held that the same standards for determining whether to dismiss for failure to state a claim under Rule 12(b)(6) should be applied to the initial review of prisoner complaints under Section 1915(e)(2)(B)(ii). <u>Mitchell</u>, 112 F.3d at 1490. While the court in <u>Mitchell</u> interpreted Section 1915(e), its interpretation guides this Court in applying the identical language of Section 1915A.

A dismissal pursuant to Section 1915A (b)(1) for failure to state a claim is governed by the same standards as dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal quotation omitted). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). Because "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys[,]" they are liberally construed. <u>Boxer X v. Harris</u>, 437 F.3d 1107, 1110 (11th Cir. 2006).

PLAINTIFF'S ALLEGATIONS

Plaintiff asserts a broad spectrum of contentions in his Complaint. His far-ranging allegations include claims of excessive uses of force, violations of his religious rights, and retaliation for his exercise of free speech.

Plaintiff contends that he was subjected to two (2) instances of excessive force and violations of his First Amendment rights on April 12, 2013. Specifically, Plaintiff asserts that Correctional Emergency Response Team ("CERT") officers, led by Defendants Whitfield and

Santiago, ordered Plaintiff to take his clothes off and submit to a cavity search.[1]  According to

Plaintiff, this cavity search required him to take off his clothes, come to the tray flap, bend over

at the waist, and spread his buttocks so officers could visually inspect the anal cavity.  Plaintiff

contends he and his cell mate informed Defendant Santiago that they could not be in the presence

of another man while naked, as to do so is against their religious beliefs.  (Doc. 1, p. 7.)  Plaintiff

alleges he and his cell mate requested that they be allowed another manner in which to comply

with the order.  Plaintiff maintains he made several pleas to the officers to allow him to comply

with the directive without violating his religious beliefs.

Defendants Whitfield, Santiago, Abalos, and Griffin approached his cell once again, and

Plaintiff states he and Defendant Whitfield were able to agree to a manner in which to have this

search conducted.  (Id. at p. 9.)  Plaintiff alleges Defendant Whitfield dishonored this agreement,

and Defendant Abalos sprayed him with mace, which caused him to suffer pain, suffering, and

injuries.  (Id. at p. 10.)  According to Plaintiff, he did nothing to warrant being sprayed with

mace.  Plaintiff states that he was forced to stay in his cell, which was filled with mace, and he

could not breathe and lost consciousness.  Plaintiff also claims that when members of the CERT

eventually came back to his cell, he informed Defendant Abalos that he needed medical

attention.  Plaintiff further contends Defendant Abalos once again instructed him to comply with

the directive to submit to a strip search, and Plaintiff complied over objection and under the

threat of more force.

Plaintiff alleges Defendants Williams, Deal, Johnson, McFarlane, and Smokes watched

as these events were happening and did nothing.  (Id. at p. 12.)  Plaintiff avers he was taken to

---

[1]  Plaintiff also asserts that his cellmate was subject to the same search.  To the extent Plaintiff wishes to
set forth claims on behalf of his cellmate, he cannot do so.  "An individual unquestionably has the right to
litigate his own claims in federal court, . . . The right to litigate for oneself, however, does not create a
coordinate right to litigate for others."  Walker v. Brown, Case No. CV112-105, 2012 WL 4049438, at *1
(S.D. Ga. Aug. 14, 2012), adopted by 2012 WL 405038 (S.D. Ga. Sept. 13, 2012).

the showers, and the water was far too hot, which intensified the burning and pain from the mace spray. Plaintiff states he called to Defendant Williams while he was in the shower and told Defendant Williams he was in pain, yet Defendant Williams simply told him to comply with given orders next time. Plaintiff asserts Defendants Williams, Deal, and McFarlane knew he was in pain and in need of medical attention but did nothing to help him.

Plaintiff contends he was taken from the shower when one of the officers, who he believes to be Defendant Abalos, grabbed him "inappropriately on the buttock." (Id. at p. 13.) Plaintiff also avers Defendant Abalos dragged him to the medical unit using the "chicken wing" maneuver under the direction of Defendant Whitfield, which caused great pain and the dislocation of his shoulder. Plaintiff states he was dragged to the shower and to medical while exposing his "awrah"[2]—which Plaintiff describes as the area between his waist and knees— because he and his cell mate were only given one (1) pair of boxer shorts. (Id. at p. 12, 14.) Plaintiff alleges the medical staff provided no medical treatment whatsoever. (Id. at p. 15.) Plaintiff also claims Defendant Griffin videotaped everything that occurred in the medical unit until Defendant Whitfield directed him to turn off the camera. Plaintiff asserts Defendant Smokes noticed Plaintiff was "messed all up" because he did not follow orders, but Defendant Smokes did nothing to help him. (Id. at p. 14.) Plaintiff contends he was not allowed to clean or sanitize his cell for one to two weeks once he returned to it, even though everything in the cell was covered in mace spray.

Plaintiff says he was given a false disciplinary report later this same date based on failure to follow instructions. (Id. at p. 16.) Plaintiff also claims Defendant Abalos served the disciplinary report on him and reminded Plaintiff that he had been told to withdraw his

---

[2] Plaintiff uses the word "aura", but it appears "awrah" is the correct spelling of this word in the given context. See http://islamic-dictionary.tumblr.com/post/5658467793/awrah-arabic-is-a-term-used, last accessed April 28, 2015.

grievances.  Plaintiff states he and several other inmates called the Prison Rape Elimination Act ("PREA") hotline and reported the alleged sexual assault and misconduct by the officers.  (<u>Id.</u>)  Plaintiff asserts he filed a grievance about the events of April 12, 2013, on April 15, 2013.  Plaintiff also asserts Defendant Johnson approached him two days later and threatened him with disciplinary reports and other measures because of the grievance he filed and for calling the PREA hotline.  (<u>Id.</u> at p. 17.)  Plaintiff alleges he received another false disciplinary report from Defendant Johnson.  Plaintiff contends that, during the disciplinary hearings on these two disciplinary reports, he was denied his rights to call witnesses and to present evidence by Defendant Bynum.

Plaintiff alleges Defendant Bynum imposed severe and unconstitutional punishment on him, and this was done for the purposes of retaliation.  Specifically, Plaintiff contends Defendant Bynum imposed the following sanctions against him: nine (9) months' outdoor recreation restriction, and 450 days' commissary, telephone, and package restrictions.  According to Plaintiff, the sanctions he received "resulted in conditions of confinement that are much worse than what is normal for prisoners."  (<u>Id.</u> at p. 19.)  Plaintiff contends that the events of April 12, 2013, and the events resulting thereafter, were put into motion because he was falsely accused of being a member of a gang two months prior.  (<u>Id.</u> at pp. 19–21.)

Plaintiff also sets forth events which allegedly occurred from June 13, 2013, through April 3, 2014.  According to Plaintiff, these events occurred as a result of Defendants retaliating against him because he filed grievances.  Specifically, Plaintiff claims Defendants Williams and Johnson approached him on June 14, 2013, and threatened him by stating the grievances he was filing had gotten him "in trouble", and Plaintiff should stop if he "knew what was best" for him.  (<u>Id.</u> at p. 21.)  Plaintiff states he was "harassed and threatened" by Defendants Abalos and Jones

while he was in the intake area on June 19, 2013. Plaintiff also states Defendants Williams and Deal threatened him on July 5, 2013, based on the grievances and other paperwork Plaintiff had filed. According to Plaintiff, Defendants Williams and Smokes came to his cell and threatened him on July 30, 2013, and Defendant Williams told Plaintiff he would have the CERT officers (including Defendants Whitfield, Santiago, Abalos, Griffin, and Jones) hurt him and that he was trying to find a "justifiable" way to kill him. (Id.) Plaintiff maintains Defendant Williams directed Defendants Whitfield, Santiago, Abalos, Griffin, and Jones and other CERT members to make Plaintiff shave and to use force if necessary, even though Plaintiff informed them it was against his religious beliefs to shave. However, Plaintiff avers the CERT members were called away and did not return.

Plaintiff maintains he was threatened with several acts over the course of several months' time, yet these threatened acts did not occur. (Id. at pp. 22–25.) As an exception, Plaintiff states he was shaved or forced to shave, in violation of his religious beliefs. Plaintiff further contends Defendant Davis did a "shakedown" of his cell on November 4, 2013, and took some of his property. Plaintiff also contends Defendant Davis forced him to shave on this same date and "said something about the papers [he] filed." (Id. at p. 23.)

Plaintiff claims he was removed from his cell on February 6, 2014, and placed in a "hard cell" for no reason at all. According to Plaintiff, a hard cell is a "punishment cell[,]" and his placement in this cell "is clear that it was done in retaliation[.]" (Id. at p. 24.) However, Plaintiff fails to allege who is responsible for this move.

Plaintiff names each Defendant in his individual and official capacity.

DISCUSSION

Plaintiff's allegations implicate numerous theories of liability, and the undersigned addresses each of these in turn. This Court accepts Plaintiff's non-conclusory factual allegations as true, as it must at this stage.

## I. Official Capacity Claims

To the extent Plaintiff brings claims against Defendants in their official capacities for monetary relief, his claims are due to be dismissed under the doctrine of Eleventh Amendment sovereign immunity. It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 monetary damages claims against the state or an agency of the state. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). A lawsuit against a correctional officer in his official capacity is no different from a suit against the government itself; such a defendant is immune. Smith v. Fla. Dep't of Corr., 318 F. App'x 726, 728 (11th Cir. 2008) (citing Powell v. Barrett, 496 F.3d 1288, 1308 & n.27 (11th Cir. 2007)). Furthermore, Eleventh Amendment immunity also shields states and state officers in their official capacity from suit under the RLUIPA. Sossamon v. Texas, ___ U.S. ___, 131 S. Ct. 1651 (Apr. 20, 2011). Accordingly, Plaintiff's monetary damages claims against each Defendant in his official capacity should be **dismissed**.

## II. Sexual Abuse

### A. Underlying Allegations

Plaintiff apparently seeks to assert an Eighth Amendment claim with his allegations that he had to submit to a cavity search and that Defendant Abalos brushed against or grabbed Plaintiff's buttocks. A prison official's sexual assault of a prisoner may violate the Eighth Amendment because sexual assault has "no legitimate penological purpose and is simply not part

of the penalty that criminal offenders pay for their offenses against society." See Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006). Under Eleventh Circuit law, "severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." Boxer X, 437 F.3d at 1111. However, "[t]o prove an Eighth Amendment violation based on sexual abuse, a prisoner must show that he suffered an injury that was objectively and sufficiently serious and that the prison official had a subjectively culpable state of mind." Id.

In Boxer X, the Eleventh Circuit Court of Appeals "concluded that a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than de minimis injury and affirmed the dismissal of the Eighth Amendment claim." 437 F.3d at 1111. (internal citation and punctuation omitted). The Eleventh Circuit explained that the plaintiff failed "to satisfy the objective component of the applicable standard in that he has not alleged any injury, let alone an injury of sufficient gravity to establish an Eighth Amendment violation." Id.; see Allen v. McDonough, No. 4:07-CV-469-RH-GRJ, 2011 WL 4102525, at *5 (N.D. Fla. Aug.17, 2011) (collecting cases in support of the proposition that "one incident of non-violent harassment alone [is] not sufficient to meet the cruel and unusual punishment standard"), *adopted by* 2011 WL 4103081 (N.D. Fla. Sept. 14, 2011).

Even if Plaintiff was forced to submit to a cavity search and Defendant Abalos may have brushed against or grabbed Plaintiff's buttocks, Plaintiff fails to show an injury which is sufficiently serious to give rise to an Eighth Amendment violation. See Moton v. Walker, 545 F. App'x 856, 860 (11th Cir. 2013) (affirming the grant of summary judgment in favor of a prison guard who conducted a visual cavity search of the plaintiff which required him to remove his

clothing, bend at the waist, spread his buttocks, and cough on three occasions). Consequently, Plaintiff's putative sexual assault claims under the Eighth Amendment should be **dismissed**.[3]

## B.    Nonfeasance

As a natural consequence of the insufficiency of Plaintiff's Eighth Amendment sexual abuse claims, Plaintiff cannot sustain a cause of action against Defendants Williams, Deal, Johnson, McFarlane, and Smokes for their alleged nonfeasance in failing to come to Plaintiff's aid. According to Plaintiff, Defendants Williams, Deal, Johnson, McFarlane, and Smokes witnessed this alleged "sexual assault" and did nothing to prevent or correct it. It is not necessary that a correctional officer actually participate in the constitutional violation in order to be held liable under Section 1983. Rather, "an officer who is present at the scene and who fails to take reasonable steps to protect [a] victim of" the constitutional violation "can be held liable for his nonfeasance." See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing Fundiller v. City of Cooper, 777 F.2d 1436, 1442 (11th Cir. 1985)). However, because Plaintiff was not subjected to an Eighth Amendment violation via the strip search, the officers watching the strip search cannot be held for failing to intervene. Thus, Plaintiff's nonfeasance claims against Defendants Williams, Deal, Johnson, McFarlane, and Smokes should be **dismissed**.

---

[3]    The Court notes Plaintiff's assertion that his sexual abuse complaint was "substantiated" after investigation. (Doc. 1, p. 17.) Nevertheless, Plaintiff's factual allegations do not establish a sufficient injury, which is essential to sustaining a cause of action under the Eighth Amendment. A prisoner has a constitutional right to bodily privacy "because most people have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993) (internal citation omitted). The decision on whether a prisoner's constitutional right to bodily privacy has been violated must be made on a case-by-case basis. Id. "Relevant factors include the scope of the intrusion, the manner in which it was conducted, the place in which it was conducted, and the justification for initiating it." Irvin v. Smith, No. CV604-024, 2005 WL 1863279, at *8 (S.D. Ga. May 24, 2005) (citing Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Plaintiff's allegations do not establish that any alleged sexual abuse was of repetitive nature or that he was forced to expose himself in front of a female.

## III.    Verbal Threats

As laid out above, Plaintiff alleges that defendants verbally intimidated and threatened him.  (See, e.g., Doc. 1 at 24.)  However, as to almost all of these threats, Plaintiff does not contend that Defendants acted on them.  In a similar context, the Eleventh Circuit has affirmed the dismissal of claims based on prison officials' threats "because the defendants never carried out these threats."  Hernandez v. Fla. Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)).  The court further held that "verbal abuse alone is insufficient to state a constitutional claim."  Id.  Thus, Plaintiff's claims that Defendants Williams, Johnson, Smokes, Santiago, and Whitfield committed constitutional violations through unfulfilled threatening and verbal harassment should be **dismissed**.[4]

## IV.    Preliminary Injunctive Relief Claims

Plaintiff has requested that this Court enter a preliminary and permanent injunction against all Defendants.  To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the

---

[4]  This analysis does not apply to any threats that were made to force Plaintiff not to exercise his religion. As set forth below, Plaintiff's RLUPIA and Free Exercise claims will proceed.  Thus, Plaintiff can show that Defendants substantially burdened his religion through threatened actions.  Additionally, the threats may be used to support Plaintiff's allegations of free speech violations.  See Pittman v. Tucker, 213 F. App'x 867, 870 (2007) (prison officials' statement that prison officials would do "something drastic" if prisoner continued to file grievances could support first amendment retaliation claim).  However, the threats cannot constitute standalone constitutional violations.

'burden of persuasion' as to the four requisites." <u>Horton v. City of Augustine, Fla.</u>, 272 F.3d 1318, 1326 (11th Cir. 2001). Plaintiff has not satisfied the prerequisites for a preliminary injunction. Specifically, Plaintiff fails to demonstrate that he has a substantial likelihood for success on the merits of his surviving claims. Accordingly, Plaintiff's request should be **denied** at this time. However, this is not to say Plaintiff cannot sustain a viable claim for injunctive relief, as noted in Section VI of this Report. Rather, this recommendation speaks only to Plaintiff's request for the issuance of injunctive relief at this time.

## V.     Due Process Claims

### A.     Substantive Due Process

Plaintiff alleges that Defendant Bynum placed restrictions on his outdoor recreation as well as his use of the commissary, telephone, and receipt of packages and that these restrictions were worse than what other prisoners received. "The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" <u>Kirby v. Siegelman</u>, 195 F. 3d 1285, 1290 (11th Cir. 1999) (quoting U.S. Const. Amend. XIV). The Supreme Court has identified two situations in which a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 1290–91 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)). Plaintiff fails to allege sanctions imposed by Defendant Bynum as a result of disciplinary proceedings that would plausibly constitute an "atypical and significant hardship" on Plaintiff in relation to the ordinary incidents of prison life. Instead, Plaintiff makes

a bare allegation that the imposed sanctions caused a change in his conditions of confinement which were much worse than those conditions for prisoners in the general population. Even when construed in the light most favorable to Plaintiff, this allegation does not state a plausible claim for a due process violations. Thus, Plaintiff's substantive due process claim against Defendant Bynum should be **dismissed**.[5]

### B. Deprivation of Property

The intentional deprivation of property gives rise to a due process clause violation when the government fails to provide an adequate post deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Pursuant to O.C.G.A. § 51-10-1, Georgia has created a civil cause of action for the wrongful deprivation of personal property. See Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987). As the alleged deprivation of Plaintiff's property occurred in Georgia, Georgia law provides the appropriate remedy. Plaintiff makes no allegation that he has pursued this remedy. Thus, Plaintiff's claim that Defendant Davis took his property on November 4, 2013, should be **dismissed**.

### C. Procedural Due Process

However, Plaintiff's procedural due process claims against Defendant Bynum should proceed. Plaintiff contends he was not allowed to call witnesses or to present evidence during his disciplinary proceedings. An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Constitutionally adequate process requires compliance with the minimum due process protections accorded to an

---

[5] As set forth below, Plaintiff's claims of free speech retaliation should proceed past this initial review. Accordingly, Plaintiff should be allowed to support his retaliation claims with evidence of Defendant's Bynum's restrictions and his claim that those restrictions constituted retaliation.

inmate in prison disciplinary proceedings: (1) the right to receive written notice of the charges against him at least 24 hours before his hearing; (2) the right to call witnesses and present documentary evidence, where doing so would not be unduly hazardous to institutional safety or correctional goals; and (3) the right to receive a written statement setting forth the disciplinary committee''s findings of fact.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563–66 (1974).  Under the liberal construction that the Court must apply at this stage, Plaintiff states a plausible claim that Defendant Bynum violated these rights.

## VI.    Religious Exercise Claims

### A.    RLUIPA

The RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of [Title 42], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> > (1) is in furtherance of a compelling government interest; and
> >
> > (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a).  A plaintiff bears "the initial burden of proving" a policy or action "implicates his religious exercise.  <u>Holt v. Hobbs</u>, ___ U.S. ___, 135 S. Ct. 853, 862 (Jan. 20, 2015).  The RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief[.]"  42 U.S.C. § 2000cc–5(7)(A).  A plaintiff also has the burden of establishing the policy or action "substantially burden[s an] exercise of religion."  <u>Holt</u>, ___ U.S. at ___, 135 S. Ct. at 862.

According to Plaintiff, being undressed in front of other men and having to shave his beard imposed a substantial burden on the exercise of his religion.  The Court must accept such

assertions as true in conducting a frivolity review.  Thus, Plaintiff arguably sets forth a plausible cause of action pursuant to the RLUIPA against Defendants Whitfield, Santiago, Abalos, and Griffin.  However, such a claim is limited to potential injunctive relief.

"Section 1997 defines an institution as a facility or institution that, among other things, 'is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State.'"  Ish Yerushalayim v. United States, 374 F.3d 89, 92 (2d Cir. 2004) (quoting 42 U.S.C. § 1997(1)(A)).  The "RLUIPA creates a private cause of action for a prison inmate if section 3 is violated, and further provides that the complaining party, if successful, may 'obtain appropriate relief against a government.'"  Smith v. Allen, 502 F.3d 1255, 1269 (11th Cir. 2007) (quoting 42 U.S.C. § 2000cc–2(a)), and *abrogated on other grounds by* Sossamon, ___ U.S.___, 131 S. Ct. 1651.  "The phrase 'appropriate relief' in [the] RLUIPA encompasses monetary as well as injunctive relief."  Id. at 1271.  However, "a prisoner plaintiff's right to monetary relief is severely circumscribed by the terms of the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(sic)."  Id.  The PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997(e); see also Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir.2002) (construing § 1997(e) as barring a prisoner from obtaining compensatory damages for solely mental or emotional harm while he is in custody).  Moreover, the Eleventh Circuit has held that Section 3 of the RLUIPA (42 U.S.C. § 2000cc-1) "cannot be construed as creating a private action against individual defendants for monetary damages."  Smith v. Allen, at 1275.

For these reasons, Plaintiff's monetary damages claims against Defendants Whitfield, Santiago, Abalos, and Griffin under the RLUIPA are barred and should be **dismissed**, though Plaintiff's RLUIPA claims for injunctive relief against these Defendants will proceed.

**B.      Free Exercise Claims**

"To establish a violation of his right to free exercise," a plaintiff "must first establish that a state actor imposed a "substantial burden" on his practice of religion." Wilkinson v. GEO Grp., Inc., No. 14-10215, 2015 WL 1526642, at *2 (11th Cir. Apr. 7, 2015) (citing Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater, 2 F.3d 1514, 1549 (11th Cir. 1993)). The defendants can then support their conduct on the ground that they applied a "neutral law of general applicability[.]" Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 879 (1990). "In the prison context, the state actor can also defend the action if it is 'reasonably related to legitimate penological interests.'" Wilkinson, 2015 WL 1526642, at *2 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). To prove that his religious exercise was substantially burdened, a plaintiff "must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires." Id.; cf. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) (concluding that, under the Religious Land Use and Institutionalized Persons Act, "a 'substantial burden' must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."). Plaintiff's allegations of being undressed in front of other men and having to shave his beard arguably set forth free exercise claims against Defendants Whitfield, Santiago, Abalos, and Griffin.

**VII.    Retaliation Claims**

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." See, e.g., Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).  It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id.  "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff's assertions that he filed grievances and made complaints to the PREA hotline are constitutionally protected speech.  Additionally, Plaintiff arguably asserts that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment rights based on Defendants' actions.  Bennett, 423 F.3d at 1252 (noting "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts[ ]") (citing Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999)).  Thus, Plaintiff makes sufficient allegations that the alleged retaliatory actions of Defendants Bynum, Johnson, Whitfield, Abalos, Williams, Davis, Deal, Santiago, and Jones caused an "adverse effect" to the exercise of his First Amendment rights.

## VIII.  Eighth Amendment Claims (Excessive Use of Force/Deliberate Indifference)

In addition, the Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates.  This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates.  Farmer v. Brennan, 511 U.S. 825, 832 (1994).  It is also a well-settled principle that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment" in violation of the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (internal quotes omitted)).  Plaintiff arguably sets forth Eighth Amendment claims against Defendants Whitfield, Abalos, Santiago, (excessive use of force and deliberate indifference), Williams, Deal, Smokes, McFarlane, and Griffin (deliberate indifference only). To be clear, Plaintiff's sanctioned Eighth Amendment claims are based on his assertions that he was sprayed with mace unjustifiably and was dragged to the showers, which allegedly caused the dislocation of his shoulder.

## IX.  Supervisory Liability

According to Plaintiff, Defendants Williams, Deal, Johnson, Smokes, and McFarlane, all of whom hold supervisory positions, encouraged and/or ordered Defendants Abalos, Whitfield, and Santiago to use an excessive amount of force against Plaintiff.  In Section 1983 actions, liability must be based on something more than a theory of respondeat superior.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Employment Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the

supervisor's conduct and the alleged violations.  Id. at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct."  Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).  Plaintiff's allegations that Defendants Williams, Deal, Johnson, Smokes, and McFarlane ordered or otherwise encouraged their subordinates to violate Plaintiff's constitutional rights arguably set forth an Eighth Amendment claim against these Defendants.

## X.     Fourth Amendment Claim

Finally, Plaintiff's claim that he was subjected to a strip search sets forth a plausible Fourth Amendment violation.  The Fourth Amendment "right of the people to be secure in their persons . . . against unreasonable searches and seizures" generally requires a law enforcement officer to have probable cause for conducting a search.  U.S. Const. amend. IV.  "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed," and that evidence bearing on that offense will be found in the place to be searched.  Brinegar v. United States, 338 U.S. 160, 175–76 (1949) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).  The Fourth Amendment does not prohibit strip searches, including visual body cavity inspections, of convicted prisoners and detainees, even absent reasonable suspicion that a prisoner is carrying contraband, so long as the searches are conducted in a reasonable and non-

abusive manner. <u>Bell v. Wolfish</u>, 441 U.S. 520, 558 (1979); <u>Powell v. Barrett</u>, 541 F.3d 1298 (11th Cir. 2008). Given his allegations that the search in this case was conducted in an unreasonable and abusive manner, Plaintiff arguably sets forth a claim under the Fourth Amendment against Defendants Abalos, Whitfield, and Santiago.

CONCLUSION

These allegations, when read in a light most favorable to the Plaintiff, arguably state colorable claims for relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1915A against Defendants: Bynum (procedural due process and retaliation); Whitfield, Abalos, and Santiago (excessive force, deliberate indifference, retaliation, religion claims, and Fourth Amendment); Williams, Deal, McFarlane, and Smokes (excessive force, deliberate indifference), Griffin (deliberate indifference and religion claims); Davis (retaliation and religion claims); Jones (retaliation); and Johnson (excessive force and retaliation). A copy of Plaintiff's Complaint and a copy of this Order shall be served upon Defendants Bynum, Whitfield, Abalos, Santiago, Williams, Smokes, Griffin, Deal, Johnson, Davis, Jones, and McFarlane by the United States Marshal without prepayment of cost.

It is my **RECOMMENDATION** that Plaintiff's official capacity claims against all Defendants, as well as his sexual abuse claims, standalone verbal threats claims, substantive due process claims, deprivation of property claims, and Plaintiff's monetary damages claims under the RLUIPA be **DISMISSED**. It is also my **RECOMMENDATION** that Plaintiff's request for the issuance of an injunction be **DENIED** at this time.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address

any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report to which objection are made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Plaintiff.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. FED. R. CIV. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendants by first-class mail and request that the Defendants waive formal service of summons. FED. R. CIV. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. FED. R. CIV. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. FED. R. CIV. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. FED. R. CIV. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. FED. R. CIV. P. 30(c).

## <u>INSTRUCTIONS TO PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. FED. R. CIV. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." FED. R. CIV. P. 10(a). Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a caption or a certificate of service will be disregarded by the Court and returned to the sender.

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Failure to do so may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, FED. R. CIV. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1.

Interrogatories are a practical method of discovery for incarcerated persons. See FED. R. CIV. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as Defendants. Interrogatories shall not be filed with the court. Local Rule 26.6. Interrogatories are not to contain more than twenty-five (25) questions. FED. R. CIV. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. FED. R. CIV. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard

cost of fifty cents ($.50) per page.  **If Plaintiff requests copies of any documents including the docket sheet, the Court will presume that Plaintiff consents to the charge of fifty cents ($.50) per page from the Plaintiff's prison trust account, and the Court will seek collection of such an amount from the Plaintiff's account**.  The Court may require the prepayment of fees prior to providing copies of any documents.

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  FED. R. CIV. P. 41; Local Rule 41.1.

It is the Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants.  Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service.  "Failure to respond shall

indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, he must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should he fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 29th day of April, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA